IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

LARRY DENNIS ROY,              )
                               )
        Petitioner,            )
                               )
v.                             )      Case No. CV-01-CO-1892-E
                               )
CHARLIE JONES, Warden;         )
ATTORNEY GENERAL OF            )
THE STATE OF ALABAMA,          )
                               )
        Respondents.           )

**MEMORANDUM OPINION**

This is an action by an Alabama state prisoner pursuant to 28
U.S.C. § 2254, challenging the constitutional validity of the
conviction for capital burglary-murder that he received in the St.
Clair County Circuit Court on February 16, 1997.[1] The petitioner,
Larry Dennis Roy, filed his *pro se* petition for writ of *habeas
corpus* on July 30, 2001. He is incarcerated at Holman Correctional
Facility in Atmore, Alabama.

---

[1] Petitioner first was convicted on December 12, 1991,
after a jury trial, and received a death sentence. He was
given a new trial and was again convicted on February 16,
1997. He was subsequently sentenced to life imprisonment
without parole.

## PROCEDURAL HISTORY

On February 16, 1997, the petitioner was convicted after a jury trial of capital murder for a killing that occurred during the commission of a burglary.  He was sentenced to life without parole. Attorney Don Hamlin was appointed to represent petitioner.  Hamlin withdrew, and Andrew Lipps, Don Blevins, and L. Dan Turberville represented petitioner at his second trial and on appeal.

Petitioner appealed his conviction to the Alabama Court of Criminal Appeals, raising the following issues: (1) that African Americans were not adequately represented in the jury pool for both the grand jury and the petit jury, in violation of the Constitution and state and federal laws; (2) that the trial court erred in denying a motion to exclude evidence relating to a microscopic hair analysis; (3) that the trial court erred in permitting a witness to testify that she could identify petitioner as her assailant based on the feel of his hair; (4) that the trial court erred in refusing to allow petitioner's counsel to cross-examine a witness about pending felony charges against him; (5) that the trial court erred in admitting photographs of the decedent; (6) that the trial court erred in that it did not grant motions to dismiss the indictment. The Alabama Court of Criminal Appeals affirmed the conviction by memorandum opinion dated August 14, 1998, stating:

Affirmed by memorandum.

The appellant, Larry D. Roy, was convicted of one count of murder made capital because it was committed during a burglary in the first or second degree or an attempt thereof, a violation of § 13A-5-40(a)(4), Code of Alabama, 1975. He was sentenced to a term of life imprisonment without the possibility of parole.

The evidence elicited at trial established that during the early morning hours of November 20, 1990, the appellant broke into the house of Wayne Brown, crept up the stairs to where Brown lay sleeping with Barbara Street, the appellant's former companion, and he stabbed them both. After a struggle, Street was able to escape; however, Brown did not survive the attack and died of multiple stab wounds.

The appellant and Street met during the spring of 1990 in Louisiana. Shortly thereafter, they began living together. Both the appellant and Street were alcoholics. Several months later, the appellant and Street moved to Alabama. They lived in various places in and around Irondale, Alabama. At one point, the appellant and Street lived with the victim, Wayne Brown. By November, the appellant and Street were living with Daniel Boone.

On November 13, 1990, Street got into a fight with the appellant and Boone. As a result Boone asked Street to leave. Street left Boone's house on foot, without any of her possessions. She ended up spending the night at the Blue Eagle Club. The following morning, Street returned to Boone's house to retrieve some of her possessions. She particularly wanted to collect a suitcase containing various items of sentimental value. While Street was attempting to retrieve her possessions, the appellant arrived. He threw some of her belongings at her; however, he did not throw the suitcase at her. Street grabbed what clothing she could, and then she left.

Street returned to the Blue Eagle Club. That evening, Wayne Brown went to the Blue Eagle Club. Street left the club with Brown, and they returned to his house. The next day Street again went to Boone's house to try and retrieve some of her belongings. She was accompanied by Brown's cousin, Suzy. When they arrived at Boone's house, the appellant was present. He refused to allow

3

Street to take any of her possessions with her.  Street and Suzy left Boone's house, but later returned so that Street could tell the appellant where she was staying so that if he changed his mind about allowing her to retrieve her possessions, he would know where to contact her.  When they returned to Boone's house, the appellant was gone.

Street and Suzy returned to Wayne Brown's house.  Present when they arrived were Wayne Brown, Brown's parents, and the appellant.  The appellant asked Street to collect her clothes and return to Daniel Boone's house with him.  The appellant told Street that, if she returned to Boone's home with him, he would not get drunk and hit her anymore.  Street refused.  The appellant tried to convince Street to change her mind, but she remained resolute in her refusal.  Eventually, the appellant gave up and left.  Street continued to stay at Brown's house.

Brown had been charged with D.U.I. and had to appear in court on the night of November 20, 1996.  Street accompanied Brown and his parents to court.  Because of the court appearance, neither Street nor Brown consumed any alcohol that day.  After the court appearance, everyone returned to Brown's house around 8:00 or 8:30 p.m.  Brown's parents stayed for approximately 45 minutes.  After they left, Street and Brown watched television.  Around midnight, they carried the television into the bedroom.  Brown fell asleep; Street continued to watch television for a while longer before she turned the television off and went to sleep.

At some point, Street awakened to hear Brown yell, "What the hell is going on?"  (R. 219.)  As she awoke, she realized that someone was cutting her with a knife.  Street grabbed for the knife and, in doing so, cut her hand.  She also managed to grab her attacker's hair.  From the feel of the attacker's hair, Street immediately recognized that the attacker was the appellant.  She pleaded, "Larry, please don't do this.  Don't do this."  (R. 347.)  Although Street could not see the face of her attacker, she positively identified him as the appellant.  Street smelled alcohol on his breath.

Brown then raised up and, by this action, stopped the attack on Street.  Street jumped out of bed, looking for a light to turn on.  She stumbled out of the bedroom,

4

into the hall, and then into another bedroom, all the while looking for a light. Street could hear the signs of a struggle from the bedroom that she had fled. As she started back out of the spare bedroom, someone ran past her and escaped into the night. Street finally found a light and turned it on. She discovered Brown lying on the floor in a pool of blood. He was still alive. Street covered him with a blanket and ran for help.

Brown subsequently died as a result of his injuries. He sustained five stab wounds, three slash wounds, and thirteen other superficial wounds. Foreign hairs consistent with the head hair of the appellant were found on Brown's body and clutched in his hand.

During the course of their investigation, law enforcement officials discovered a pair of camel hair boots in Brown's home that Street said belonged to the appellant. Officials also discovered a plaid jacket belonging to the appellant in a mudhole approximately one mile from Brown's house. Foreign hairs consistent with the head hair of Brown were found on the jacket. The police interviewed two acquaintances of the appellant - Michael Cook and Chuck Poe. Cook told the police that on the evening of November 20, the appellant showed him a knife and stated that he was going to "get" Brown and Street. Both men told the police that the appellant subsequently admitted to them that he had killed Wayne Brown and stabbed Barbara Street.

Eight days after Brown's murder, the police recovered a pair of blood-stained overalls and a camouflage jumpsuit from an abandoned house next to Michael Cook's house. Street identified the overalls as a pair she left at Daniel Boone's house. She also told the police that the appellant owned a camouflage jumpsuit like the one found in the abandoned house. The blood found on the overalls and camouflage jumpsuit was type 0, a blood type shared by 50% of all individuals, including the appellant, Wayne Brown, and Barbara Street.

The appellant denied any involvement in the murder of Wayne Brown. He denied making any inculpatory statements to Cook and Poe. The appellant testified that he never asked Barbara Street to come back and live with him. He said that on the night of the murder, he went to Lake Purdy with Griffin Madison and Chuck Poe. Once there,

according to the appellant, all three men drank heavily. The appellant admitted that the plaid jacket and camel hair boots belonged to him; however, he claimed that he had given these items to Barbara Street several weeks before the murder. He denied ever owning or wearing the coveralls or the camouflage jumpsuit that the police found in the abandoned house next to Michael Cook's home.

I

The appellant argues that the jury venire panels from which his 1991 grand jury and his 1996 petit jury were drawn were not representative of a fair cross-section of the population of the district wherein the court was convened. We disagree.

In the absence of proof to the contrary, the jury selection process is presumed valid and free from error. Washington v. State, 333 So. 2d 618, 619 (Ala. Cr. App. 1976). This Court set out the elements necessary to establish a fair cross-section violation in Sistrunk v. State, 630 So. 2d 147 (Ala. Cr. App. 1993):

> In Daren v. Missouri, 439 U.S. 357, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979), the United States Supreme Court held that a defendant seeking to establish a prima facie case of a violation of the fair cross-section requirement must demonstrate the following three elements:
>
> > (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

630 So. 2d at 149; see also Inabinett v. State, 668 So. 2d 170, 173 (Ala. Cr. App. 1995).

Here, the appellant merely asserted that the jury venire did not comprise a fair cross-section because the percentage of blacks on the venire did not correspond to the percentage of blacks living in St. Clair County. The appellant offered no proof that the second and third prongs of the Duren test had been violated. At the hearing on the appellant's claim, the Circuit Clerk testified that the list of prospective jurors was obtained from the Administrative Office of Courts (A.O.C.). He also testified that the list A.O.C. maintained was obtained from the Department of Public Safety and represented all persons holding an Alabama driver's license or non-driver's identification card. "The practice of using drivers' licenses as the sole source for compiling a master jury list has been upheld against claims that it violates the fair cross-section requirement." Stewart v. State, 623 So. 2d 413, 415 (Ala. Cr. App. 1993). Absent proof of systematic exclusion, this Court has made it clear that a mere showing of "disparity between the percentage of blacks in the population of the county ... and the percentage of blacks on the venire" is insufficient to establish a violation of the fair cross-section requirement. Stanton v. State, 648 So. 2d 638, 641 (Ala. Cr. App. 1994); see also Jenkins v. State, 384 So. 2d 1135, 1139 (Ala. Cr. App. 1979), cert. denied, 384 So. 2d 1141 (Ala. 1980); Giddens v. State, 333 So. 2d 615, 617-18 (Ala. Cr. App. 1976). The appellant failed to establish a prima facie case of a fair cross-section violation. Accordingly, no basis for reversal exists.

II.

The appellant contends that the trial court erred in permitting Steven Drexler to testify as an expert witness concerning hair analysis and comparison.

During the appellant's trial, prosecution witness Steven Drexler was qualified as an expert in the field of trace evidence analysis, which included the area of hair analysis and comparison. Drexler testified that he was asked to analyze and compare strands of hair found on the victim, at the crime scene, and on various items of evidence, and then compare them with hair samples from the appellant, Barbara Street, and the victim, Wayne Brown. Drexler then identified some of the strands of hair found at the crime scene and on the victim as

7

consistent with the head hair of the appellant, thus
linking him to the murder of Wayne Brown and the attack
on Barbara Street.    Although the appellant filed a
pre-trial motion in limine seeking to exclude Drexler's
testimony at trial, he did not renew his motion in
limine, nor did he make any other objection to Drexler's
trial testimony.

> The general rule is that the denial of a
> motion in limine, without more, does not rise
> to the level of reversible error. Where the
> party seeking the exclusion of the evidence
> suffers an adverse ruling on its motion in
> limine, that party can preserve the ruling for
> post-judgment and appellate review only by
> objection to the introduction of the proffered
> evidence and assigning specific grounds at the
> time cf trial, unless he or she obtains the
> express acquiescence of the trial judge that a
> subsequent objection and assignment of grounds
> are not necessary.'
>
> Parks v. State, 587 So. 2d 1012, 1015 (Ala.
> 1991) (emphasis in original).   See also Ex
> parte Phillips, 527 So. 2d 154, 156 (Ala.
> 1988). Similarly, where the party seeking to
> introduce the evidence suffers an adverse
> ruling on the opposing party's motion in
> limine, the adverse ruling alone, 'unless ...
> [it] is absolute or unconditional, ... does
> not preserve the issue for appeal. 'Perry v.
> Brakefield, 534 So. 2d 602, 606 (Ala. 1988).

Morton v. State, 651 So. 2d 42, 45 (Ala. Cr. App. 1994);
see also Smith v. State, 677 So. 2d 1240, 1250 (Ala. Cr.
App. 1995); Bacot v. State, 597 So. 2d 754, 757 (Ala. Cr.
App. 1992).

Here, the appellant did not object to Drexler's testimony
at the time that evidence was offered, he did not renew
his motion in limine, nor did he obtain the express
acquiescence of the trial judge to forego the necessary
objections to that testimony when it was offered at
trial. "'Tc preserve error there must be a timely and
appropriate objection prior to the witness's answer to a
question or a motion to exclude the answer."' Rutledge v.
State, 651 So. 2d 1141, 1148 (Ala. Cr. App. 1994),

quoting <u>Watson v. State</u>, 398 So. 2d 320, 325 (Ala. Cr. App. 1980), cert. denied, 398 So. 2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S. Ct. 3085, 69 L. Ed. 2d 955 (1981).  Absent such action, "'the entire testimony of the witness remains with the jury."' 651 So.2d at 1148. Because the appellant did not properly preserve his objection to Drexler's hair analysis and comparison testimony, his claim is procedurally barred from appellate review.

In any event, Drexler's testimony regarding hair analysis and comparison was properly admitted. As we stated in <u>Mahan v. State</u>, 508 So. 2d 1180, 1183 (Ala. Cr. App. 1986):

> [E]xpert testimony as to the comparison of hair specimens has previously been allowed in criminal cases.  <u>Braggs v. State</u>, 283 Ala. 570, 219 So. 2d 396 (1969).  "The question of the competency of a particular witness to testify as an expert is addressed primarily to the trial court.  In the absence of abuse of discretion vested in the trial court, we cannot supplant its judgment by our own, even if it were otherwise." <u>Merriweather v. State</u>, 364 So. 2d 374, 375-76 (Ala. Cr. App.), cert. denied, 364 So. 2d 377 (Ala. 1978) (citations omitted).  <u>Allen v. State</u>, 472 So. 2d 1122, 1126 (Ala. Cr. App. 1985).  'The admissibility of expert opinions is authorized in Alabama by statute which reads: "The opinions of experts on any question of science, skill, trade or like questions are always admissible." ... The question of whether or not a particular witness would be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse.'  C. Gamble, <u>McElroy's Alabama Evidence</u>, § 127.01(5) (3rd ed. 1977).  The credibility of a witness, and the weight which such witness's testimony is to be accorded, are to be determined by the jury, as are any inconsistencies or contradictions in his testimony.  <u>Jones v. State</u>, 469 So. 2d 713 (Ala. Cr. App. 1985)."

There was no question that Drexler was an expert in trace evidence analysis; the appellant stipulated to that fact. Moreover, Drexler's testimony established an evidentiary predicate for the admission of his findings.  See <u>Smith v. State</u>, 677 So. 2d 1240, 1248 (Ala. Cr. App. 1995).  No basis for reversal exists as to this contention.

III.

The appellant contends that the trial court erred in permitting prosecution witness Barbara Street to testify that she was able to identify the appellant as the assailant based the feel of his hair.

During the appellant's trial, Barbara Street testified that she was awakened by Wayne Brown commenting, "What the hell is going on?"  She discovered that someone was attacking them with a knife.  She attempted to grab the knife, and in doing so, felt the attacker's hair. Recognizing the feel of the hair, Street testified that she knew that her attacker was the appellant.  She stated, "Larry, please don't do this.  Don't do this." (R. 347.)  Although the appellant filed a pre-trial motion in limine seeking to exclude Street's testimony at trial, he did not renew his motion in limine, nor did he make any other objection to Street's trial testimony.

The appellant did not object to Street's testimony at the time that evidence was offered, he did not renew his motion in limine, nor did he obtain the express acquiescence of the trial judge to forego the necessary objections to that testimony when it was offered at trial.  Accordingly, this issue has not been preserved for appellate review.  See <u>Smith v. State</u>, 677 So. 2d at 1250; <u>Morton v. State</u>, 651 So. 2d at 45; <u>Bacot v. State</u>, 597 So. 2d at 757.  "To preserve error there must be a timely and appropriate objection prior to the witness's answer to a question or a motion to exclude the answer." <u>Rutledge v. State</u>, 651 So. 2d at 1148.  Absent such action, "the entire testimony of the witness remains with the jury."  651 So. 2d at 1148.  Because the appellant did not properly preserve his objection to Street's identification testimony, his claim is procedurally barred from appellate review.

In any event, the appellant's contention of error must fail.  This Court has previously held that reliable

10

identification testimony is admissible when such testimony presents no substantial likelihood of misidentification. See <u>Jenkins v. State</u>, 627 So. 2d 1034, 1046 (Ala. Cr. App. 1992), aff'd, 627 So. 2d 1054 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S. Ct. 1388, 128 L. Ed. 2d 63 (1994), citing <u>Neil v. Biggers</u>, 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972), and <u>Manson v. Brathwaite</u>, 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). In <u>Neil v. Biggers</u>, the United States Supreme Court listed five factors to be considered in evaluating the likelihood of misidentification:

> As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S. Ct. at 382.

Our application of these factors to the facts of this case convinces us that the trial court properly allowed Street's identification to be admitted into evidence. Although darkness prevented Street from actually seeing her assailant at the time of the crime, she was able to identify him from the distinctive feel of his hair because she had been intimately acquainted with the appellant for some time. Likewise, Street's testimony demonstrates her attentiveness during the attack. She attempted to wrest the knife from her assailant and, while doing so, grabbed her attacker's hair. At this point, she immediately knew that the attacker was her former companion, Larry Roy, and she pleaded with him, "Larry, please don't do this. Don't do this." (R. 347.) Street's identification of the appellant as the attacker was immediate and never wavered, nor did she express any degree of uncertainty in her identification. The fact that darkness prevented Street from seeing the attacker does not affect the admissibility of her identification testimony, but rather affects the weight and probative value of her testimony. See, e.g., <u>Nickerson v. State</u>, 539 So. 2d 337, 340 (Ala. Cr. App. 1987). Based on the

11

totality of the circumstances, the trial court properly admitted Street's identification of the appellant as the attacker into evidence. See <u>Jenkins v. State</u>, 627 So. 2d at 1046.

IV.

The appellant contends that the trial court erred by refusing to allow him to cross-examine Barbara Street concerning criminal charges pending against her in Louisiana because, he claims, it violated his right of confrontation as guaranteed by the Sixth Amendment. We disagree.

This Court has held that, where charges are pending against a witness in a jurisdiction other than the jurisdiction in which the witness is testifying, the charges do not indicate possible bias.

> The general rule prevailing in a great majority of jurisdictions is that, subject to certain exceptions hereinafter noted, it is not permissible to show that a witness has been arrested, or that he has been charged with or prosecuted for a criminal offense, or confined in jail or prison, or to inquire as to such fact upon cross-examination, where no conviction is shown, for the purpose of impairing his credibility.
>
> . . .
>
> It is generally held, even in jurisdictions where such evidence is not ordinarily admissible, that <u>the fact that a witness has been arrested or charged with crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely. This principle has been held applicable in cases where criminal charges are pending in the same court against a witness for the prosecution in a criminal case at the time he testifies</u>, as a circumstance tending to show that his testimony is or may be influenced by the expectation or hope that, by aiding in the

12

conviction of the defendant, he would be granted immunity or rewarded by leniency in the disposition of his own case. <u>But it has been held that the pendency of charges against the witness in another county or jurisdiction cannot be shown under this theory of admissibility</u>.

<u>Woodard v. State</u>, 489 So. 1, 2-3 (Ala. Cr. App. 1986), quoting 81 Am. Jur. 2d <u>Witnesses</u> § 589, at pp. 597-98 (1976) (emphasis supplied); accord <u>Harris v. State</u>, 632 So. 2d 503, 523 (Ala. Cr. App. 1992), aff'd, 632 So. 2d 543 (Ala. 1993), aff'd, 513 U.S. 504, 115 S. Ct. 1031, 130 L. Ed. 2d 1004 (1995). Cf. <u>Hampton v. State</u>, 681 So. 2d 273, 275 (Ala. Cr. App. 1996) (reversible error to prohibit cross-examination of a state's witness about pending criminal charges in the same county); <u>Moody v. State</u>, 495 So. 2d 104, 108-09 (Ala. Cr. App.), cert. denied, 495 So. 2d 110 (Ala. 1986) (reversible error to prohibit cross-examination of a state's witness about pending criminal charges in the same county).

The district attorney's office in St. Clair County could not have made any recommendations toward Street's sentencing in Louisiana; therefore, Street could not have been helped by testifying in the present case. Likewise, there was no indication that Street was promised any help. Given the fact that Street herself was a victim of the appellant, she had every reason to testify against him. Street's testimony was not induced by her fear of being prosecuted for charges in Louisiana. Rather, her testimony was based on the fact that she wanted to see the appellant punished for the murder of her friend Wayne Brown. The "extent of cross-examination on irrelevant facts, for the purpose of testing bias or credibility of the witness's testimony, is a matter resting largely in the discretion of the trial court, [whose] ruling will not be disturbed unless it appears that it has abused its discretion to the prejudice of the complaining party." <u>Harris v. State</u>, 632 So. 2d at 523, quoting <u>Beavers v. State</u>, 565 So. 2d 688, 689-90 (Ala. Cr. App. 1990). In the present case, the trial court did not abuse its discretion in refusing to allow the appellant to cross-examine Street about pending charges in Louisiana. Accordingly, no basis for reversal exists.

13

V.

The appellant contends that the trial court erred in admitting gruesome photographs of the victim, when the cause of death was not in dispute. The state argues that this issue was not preserved for appellate review because the appellant did not object to the photographs at the time they were offered into evidence.

Our examination of the record reveals that the admissibility of the photographs was also the subject of an unsuccessful pre-trial motion in limine. However, just before the testimony of Dr. Joseph Embry, through whom the state intended to introduce the photographs, an _in camera_ hearing was held, wherein defense counsel renewed his motion in limine and offered his objections to each of the photographs the state intended to offer. During the hearing, the trial court noted that the _in camera_ hearing regarding the admissibility of the photographs was intended "as a little-bit of a time saver." (R. 768.) Given the fact that the hearing was conducted immediately before the state offered the photographs for admission into evidence, and that defense counsel renewed his motion in limine and stated his specific objections to the photographs during the hearing, we take the trial court's comments to mean that a subsequent objection and assignment of grounds were not necessary. Thus, the admissibility of the photographs was properly preserved for appellate review.

Nevertheless, the appellant's contention that the photographs should have been excluded must fail.

The law in Alabama has long been that photographs are admissible into evidence under certain conditions.

> As a general rule, photographs are admissible into evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge. Photographs which depict the character and location of external wounds on the body of a deceased are admissible even though they are

14

cumulative and based upon undisputed matters.
The fact that a photograph is gruesome and
ghastly is no reason to exclude its admission
into evidence, if it has some relevancy to the
proceedings, even if the photographs may tend
to inflame the jury. Magwood v. State, 494
So. 2d 124,141 (Ala. Cr. App. 1985), affirmed,
494 So. 2d 154 (Ala. 1986) (citations
omitted).

Harris v. State, 632 So. 2d at 530. See also Ex Parte
Siebert, 555 So. 2d 780, 783-84 (Ala. 1989), cert.
denied, 497 U.S. 1032, 110 S. Ct. 3297, 111 L. Ed. 2d 806
(1990); Mangione v. State, [Ms. CR-96-0080, June 19,
1998] ___ So. 2d ___ (Ala. Cr. App. 1998); Travis v. State,
[Ms. CR-92-958 at 84, April 18, 1997] ___ So.2d ___ (Ala.
Cr. App. 1997); Howard v. State, 678 So. 2d 302, 304
(Ala. Cr. App. 1996).

Here, the photographs were necessary and relevant because
they depicted the extent of the injuries to the victim.
The photographs also illustrated Dr. Embry's testimony
regarding the victim's autopsy. See Dabbs v. State, 518
So. 2d 825, 829 (Ala. Cr. App. 1987) (photographs of a
victim's injuries taken during an autopsy were gruesome,
but necessary to demonstrate the extent of the injuries).
The appellant's claim that the photographs should not
have been admitted because he was willing to stipulate as
to the cause of death must also fail. "In Alabama, a
party is not required to accept his adversary's
stipulation, but may insist on proving the fact." Duncan
v. State, 624 So. 2d 1084, 1086 (Ala. Cr. App. 1993).
Based on the foregoing, the admission of the photographs
was not reversible error.

VI.

The appellant argues that the trial court erred in
denying certain pro se motions to dismiss the indictment.

Our examination of the record reveals that the trial
court agreed to take the appellant's pro se motions under
advisement (S.R. 7); however, the trial court did not
issue a ruling on any of the motions.

As this Court stated in Click v. State, 695 So. 2d 209,
227 (Ala. Cr. App. 1996):

15

> "An adverse ruling is a preliminary
> requirement to preservation of error for
> appellate review .... Absent an adverse
> ruling the issue of the objection is not
> properly before the court." <u>Hudgins v. State</u>,
> 615 Sc. 2d 1297, 1299 (Ala. Cr. App. 1993),
> quoting <u>Van Antwerp v. State</u>, 358 So. 2d 782,
> 790 (Ala. Cr. App.), cert. denied, 358 So. 2d
> 791 (Ala. 1978). When an appellant fails to
> obtain an adverse ruling, the issue is not
> preserved for review. <u>Breckenridge v. State</u>,
> 628 So. 2d 1012 (Ala. Cr. App. 1993).

Because the appellant did not obtain an adverse ruling on
his <u>pro se</u> motions to dismiss the indictment, nothing has
been preserved for our review.

The judgment of the trial court is therefore affirmed

All the Judges concur.


Petitioner sought rehearing, which was denied on April 30, 1999.

Petitioner then sought review in the Alabama Supreme Court, raising

the following issues: (1) whether African Americans were properly

represented in the jury pool; (2) whether the trial court erred in

admitting into evidence the autopsy photographs; and (3) whether

the trial court properly refused to allow petitioner to cross-

examine a witness regarding felony charges pending against her.

The Alabama Supreme Court denied the petition for writ of

*certiorari* without opinion, and issued a certificate of judgment on

October 15, 1999.

On February 24, 2000, petitioner filed a *pro se* petition for

post-conviction relief pursuant to Rule 32 of the Alabama Rules of

Criminal Procedure, raising the following issues: (1) that there was insufficient evidence to support his conviction and/or indictment; (2) that petitioner received ineffective assistance of counsel at trial in that his attorneys failed to: (a) investigate the crime and seek discovery before trial;[2] (b) file a motion to dismiss the charges based on unlawful detention; (c) file a motion based on petitioner's failure to be given a proper initial appearance;[3] (d) move to suppress evidence obtained as a result of an illegal arrest; (e) investigate and "dispose of" the interrogation of petitioner by law enforcement officials; (f) object to petitioner's illegal arrest; (g) file a motion to dismiss on grounds that petitioner was interrogated without counsel after invoking his right to have counsel present; (h) meet with defendant in order to investigate the facts relating to the crime and the arrest; (i) interview potential defense witnesses concerning petitioner's alibi; (j) seek dismissal and/or move to suppress evidence relating to a second interrogation of petitioner; (k) move to suppress evidence obtained on the basis of an illegal search

---

[2] Claims 2(a)-(f), (i)-(z), (aa), (bb), and (gg) specifically complain only of the performance of petitioner's attorneys prior to or during petitioner's first trial, and during the brief time in which Hamlin and or Van Dahll represented petitioner before the second trial.

[3] Petitioner further asserts that Hamlin conspired with the prosecution and the court to deprive him of an initial appearance.

warrant; (l) object to the lack of probable cause for the warrant that led to petitioner's arrest; (m) move to suppress the seizure of petitioner's vehicle and evidence obtained through that search; (n) investigate the complaint supporting the charge against petitioner; (o) subpoena Herbert Morris as a defense witness; and (p) investigate and interview petitioner regarding petitioner's whereabouts at the time of the crime. Petitioner further argues that his attorney: (q) made an "unlawful agreement" with the district attorney, court, and court reporter to change the transcript of the preliminary hearing; (r) was biased against petitioner and had conflicts of interest;[4] (s) conspired with the district attorney to withhold exculpatory evidence; (t) had a conflict of interest based upon petitioner's civil suit against him; (u) entered into an agreement not to object to testimony of Sgt. Kile; (v) entered into an agreement not to object to the testimony of Barbara Street; (w) failed to move for a judgment of acquittal on the basis that the prosecution knowingly presented perjured testimony at trial; (x) failed to investigate the crime and interview prosecution witnesses; (y) failed to investigate and cross-examine Joe Nobles about the "trail of blood;" (z) failed to investigate the crime scene and actors in the crime; (aa) failed to

---

[4] Specifically, petitioner asserts that Hamlin was a "principle actor" in an attempt to kill Roy and that Roy brought a civil suit against Hamlin which caused Hamlin to have a conflict of interest.

18

investigate law enforcement agencies and other witnesses with personal knowledge of the crime; (bb) failed to discover and investigate the "manipulation" of expert forensic science witnesses; (cc) failed to object to admission of testimony relating to, and physical exhibits of, "bloody" clothes, "bloody" items, and a beige towel; (dd) failed to object to or move to suppress Kile's testimony regarding the search of the Shaneyfelt house; (ee) failed to object to admission of a jacket based on a lack of chain-of-custody testimony; (ff) failed to investigate and present evidence of petitioner's lack of knowledge of the area in which the jacket was found; (gg) failed to discover the discrepancy in testimony relating to a pair of boots seized from the crime scene and to object to admission of the boots; (hh) failed to expose a conspiracy between the victim's brother and law enforcement officers, forensic experts, and the prosecution concerning the boots; (ii) failed to obtain a transcript from the grand jury in order to impeach Kile and/or Street; (jj) failed to subpoena Street's medical records; (kk) failed to require the court to maintain a record of petitioner's arrest, initial appearance, and other proceedings; (ll) failed to object to or move to suppress evidence obtained by illegal search and/or seizure;[5] (mm) failed to

---

[5] In his Rule 32 petition in the trial court, petitioner lists a dozen grounds upon which he alleges counsel should have moved to suppress the evidence.

19

impeach or otherwise expose the falsity of testimony of prosecution witnesses; (nn) failed to argue that there was insufficient evidence that the murder took place during a burglary; (oo) failed to demonstrate at trial that Street's testimony was false; (pp) failed to call Officer Dale Harold as a witness; (qq) failed to object to presentation of evidence relating to a swab taken from petitioner's elbow; (rr) failed to object to changes made by the prosecutor to petitioner's statement; (ss) failed to object to admission of a head hair sample based on a lack of proper chain of custody; (tt) failed to object to perjured testimony by two forensic scientists, Warren Stewart and Phyllis Rollan; (uu) were inexperienced and incompetent in trying a case based on DNA evidence; (vv) failed to show that the testimony of Warren Stewart, an expert witness, was "untrustworthy;" (ww) failed to argue at trial or on appeal that evidence was insufficient to show that the victim was dead; (xx) failed to assert that defendant was entitled to a jury instruction regarding reckless murder; (yy) failed to object to defects in the indictment; (zz) failed to object to lack of evidence of intent to kill and of other elements of the crime; (aaa) failed to assist petitioner in preparing *pro se* pretrial motions to dismiss the indictment; (bbb) failed to challenge the indictment before trial and on appeal; (ccc) failed to present on appeal the issues petitioner raised *pro se* in his Rule 32 petition; and (ddd) failed to challenge the sufficiency of the evidence;

that petitioner was denied his right to counsel and his right to be present at his initial appearance on December 4 and did not meet his attorney until his preliminary hearing; (4) that the prosecution violated <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S Ct. 1194, 10 L. Ed. 2d 215 (1963), in failing to reveal Kile's statements given in his affidavit in support of a search warrant; (5) that the prosecution violated the Jenck's Act in failing to produce certain documents; (6) that his arrest was unlawful in that it was not supported by a lawful warrant and/or probable cause; (7) that his first and second interrogations were conducted in violation of the Sixth Amendment; (8) that his due process rights were violated when the court admitted evidence of "jailhouse conversations" between petitioner and the district attorney or law enforcement officers; (9) that the prosecution was initiated and executed in bad faith; (10) that his conviction was obtained in violation of the right against self-incrimination in that he was threatened, his statement was changed, and he was denied effective assistance of counsel; (11) that this conviction violated the protection against double jeopardy; (12) that the indictment was null and void; (13) that the prosecution improperly suppressed the "Investigation Crime Scene Report" at the 1991 trial in violation of ethical rules and § 1983; (14) that the court failed to exclude evidence relating to hairs based on an improper showing of chain of custody, illegal search and seizure, perjured foundation testimony, and cumulative

testimony; (15) that the court failed to exclude evidence relating to a swab from petitioner's elbow based on an improper showing under Rule 803 of the Alabama Rules of Evidence and perjured foundation testimony; (16) that the court improperly admitted evidence relating to blood samples in that the testimony of Stewart and Rollan was perjury; (17) that he was denied due process of law in that the court improperly admitted evidence relating to a green jumpsuit; (18) that he was denied his due process rights in that he was unlawfully arrested and was not properly given an initial appearance and arraignment; (19) that the trial court lacked jurisdiction over him; (20) that the trial court was biased towards petitioner; (21) that there was insufficient evidence to support a capital conviction in that the state failed to prove that a burglary occurred or that a victim was dead; (22) that the evidence was insufficient to prove that he had the requisite intent to kill; (23) that the indictment was null and void, multiplicious, and fatally defective.   On August 1, 2000, petitioner amended his petition, asserting; (19) that the grand jury unlawfully returned the indictment against petitioner in violation of his rights under the state and federal constitutions; (20) that the indictment was defective on several grounds; and (21) that the grand jury members were wrongfully selected from the county at large and not from the division in which the crime occurred.

After conducting an evidentiary hearing, the trial court denied the Rule 32 petition on August 11, 2000. Petitioner appealed the denial to the Alabama Court of Criminal Appeals, which affirmed the denial on February 16, 2000, stating:

> On February 16, 1997, the appellant was convicted of the capital offense of burglary/murder, and the trial court sentenced him to imprisonment for life without the possibility of parole. We affirmed his conviction in an unpublished memorandum and issued a certificate of judgment on October 15, 1999. See Roy v. State, (CR-96-1873) 741 So. 2d 480 (Ala. Crim. App. 1998) (table). On February 24, 2000, the appellant filed a Rule 32 petition, which he subsequently amended, challenging his conviction. After the State responded, the circuit court conducted an evidentiary hearing and denied the petition. This appeal followed.
>
> I.
>
> First, the appellant argues that "the State failed to use substantive documentary or physical evidence to cooberate[sic] the accusatory instrument which pulls together the commencement of the preliminary proceedings in this felony case under authority." (Appellant's brief at p. 28.) In his Rule 32 petition, the appellant did list an issue statement identical to this claim. However, he did not present the arguments he raises on appeal regarding this issue in his Rule 32 petition. Because the appellant did not raise the same arguments in his original Rule 32 petition that he raises on appeal, this issue is not properly before this court. See Morrison v. State, 551 So. 2d 435 (Ala. Crim. App. 1989), cert. denied, 495 U.S. 911, 110 S. Ct. 1938, 109 L. Ed. 2d 301 (1990).
>
> II.
>
> Second, the appellant argues that he was convicted based on perjured testimony and that the grand and petit juries were improperly drawn from the entire county rather than the division of the county in which the trial was held, in violation of § 12-16-44, Ala. Code 1975. However,

23

these claims are precluded because the appellant could have raised them at trial or on appeal, but did not. <u>See</u> Rule 32.2(a)(3) and (5), Ala. R. Crim. P.

III.

Third, the appellant argues that his trial and appellate counsel rendered ineffective assistance. To prevail on an ineffective-assistance-of-counsel claim, a petitioner must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct 2052, 80 L. Ed. 2d 674 (1984). Additionally, a petitioner must prove, by a preponderance of the evidence, the facts necessary to entitle him to relief. <u>See</u> Rule 32.3, Ala. R. Crim. P. The appellant has made allegations and drawn conclusions, but he has not supported his allegations factually. He has not shown that either his trial or appellate counsel's performance was deficient and that the deficiency prejudiced him. Because he has not provided factual evidence that either his trial or appellate counsel's performance fell below an objective standard of reasonableness, he is not entitled to relief on his ineffective-assistance-of-counsel claims. <u>See</u> <u>Ex parte Jefferson</u>, 749 So. 2d 406 (Ala. 1999).

IV.

Finally, the appellant argues that the trial court did not have jurisdiction to render a judgment and impose a sentence in his case because the indictment against him allegedly improperly used the language of a repealed capital murder statute and because it allegedly listed Barbara Faye Street, who was still alive, as the victim in the capital murder indictment. The indictment alleged that the appellant

> did intentionally cause the death of David Wayne Brown, by stabbing him with a sharp instrument, and [the appellant] caused said death during the time that [the appellant] knowingly and unlawfully entered or remained, or attempted to enter or remain unlawfully in the dwelling of David Wayne Brown, with intent to commit the crime of Assault therein, and

while effecting entry or while in the dwelling or in immediate flight therefrom, said [appellant] did cause physical injury to Barbara Faye Street who was not a participant in the crime, by cutting her with a sharp instrument, in violation of § 13A-5-40(a)(4) of the Code of Alabama.

The following are capital offenses:

    ...

    (4) Murder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant."

§13A-5-40(a), Ala. Code 1975.

"A person commits the crime of murder if.:

(1) With intent to cause the death of another person, he causes the death of that person or of another person ....

§13A-6-2(a), Ala. Code 1975.

"A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, he or another participant in the crime:

    "(2) Causes physical injury to any person who is not a participant in the crime ...."

§ 13A-7-5(a), Ala. Code 1975.


'An indictment which follows the language of a statute is sufficient to apprise the appellant of the charges against him, and to allow him to prepare a defense.' Copeland v. State, 455 So. 2d 951, 956 (Ala. Cr. App.), cert. denied, 455 So. 2d 956 (Ala. 1984) (citations omitted)

> (quoted in <u>Garrison v. State</u>, 521 So. 2d 997,
> 1001 (Ala. Cr. App. 1986)).

> <u>McLemore v. State</u>, 562 So. 2d 639, 644 (Ala. Crim. App.
> 1989). The indictment substantially followed the language
> of §§ 13A-5-40(a)(4), 13A-6-2(a)(1), and 13A-7-5(a)(2),
> Ala. Code 1975. Furthermore, it listed Street as a victim
> of the burglary rather than the capital murder.
> Therefore, the appellant's arguments are without merit.

> For the above-stated reasons, we affirm the circuit
> court's judgment.

> **AFFIRMED.**

Petitioner sought rehearing, which was denied on March 9, 2001. He then sought review in the Alabama Supreme Court, raising the following issues: (1) that the court was without jurisdiction because petitioner's indictment was based upon the language of a repealed statute; (2) that petitioner's due process rights were violated because the state knowingly presented perjured testimony; (3) that the trial court failed to properly conduct the Rule 32 proceedings; and (4) that the indictment failed to allege an offense. On June 29, 2001, the Alabama Supreme Court denied the petition for writ of *certiorari* and issued a certificate of judgment.

On May 18, 2001, petitioner filed a second Rule 32 petition in the trial court, asserting that: (1) newly discovered evidence demonstrates that the prosecutor failed to disclose evidence favorable to the defense; (2) that the trial court was without

jurisdiction to render judgment because the supporting affidavit for the search warrant contained false statements; (3) that he was denied effective assistance of counsel at trial in that his attorneys failed to obtain hair and blood test results from the prosecution; and (4) that the prosecutor withheld hair and blood test results that were exculpatory. The trial court on June 4, 2002, denied the petition on grounds that it was procedurally barred. Petitioner appealed to the Alabama Court of Criminal Appeals, raising the same four issues. On January 24, 2003, the Alabama Court of Criminal Appeals affirmed the denial, stating:

> On February 16, 1997, the appellant was convicted of capital murder. On April 10, 1997, the trial court sentenced him to imprisonment for life without the possibility of parole. We affirmed his conviction in an unpublished memorandum and issued a certificate of judgment on October 15, 1999. See Roy v. State, (CR-96-1873) 741 So. 2d 480 (Ala. Crim. App. 1998) (table). On or about February 24, 2000, the appellant filed a Rule 32 petition, which the circuit court denied after conducting an evidentiary hearing. The appellant appealed that denial, and we affirmed the circuit court's judgment. See Roy v. State, (CR-99-2407, February 16, 2001) __ So. 2d (Ala. Crim. App. 2001) (table). On May 18, 2001, the appellant filed a second Rule 32 petition, challenging his conviction. After the State responded, the circuit court summarily denied his petition. This appeal followed.

> I.

> The appellant argues that he is entitled to post-conviction relief based upon newly discovered evidence. Specifically, he contends that the State did not give him "true and complete" copies of the results of hair and serological tests performed by the Alabama

Department of Forensic Sciences that allegedly contained exculpatory evidence.   (Issues I and IV in the appellant's brief at p. 27.)   To establish a claim based on newly discovered evidence, the appellant must show that

> [t]he facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered by any of those times through the exercise of reasonable diligence.

Rule 32.1(e)(1), Ala. R. Crim. P.   The appellant has not shown that neither he nor his trial counsel knew about the existence of the reports at any of these times or that they could not have discovered the reports by these times through the exercise of reasonable diligence. Therefore, he has not satisfied his burden of pleading pursuant to Rules 32.3 and 32.6(b), Ala. R. Crim. P., as to this claim.

II.

The appellant also argues that the trial court did not have jurisdiction to render a judgment and impose a sentence in his case.   Specifically, he contends that the search warrant was not valid because the supporting affidavit allegedly contained "material false statement[s] made intentionally in disregard for the truth."   (Appellant's brief at p. 35.)   However, this claim is a nonjurisdictional claim that is successive because the appellant did not raise it in his previous Rule 32 petition and he has not shown that this ground was "not known or could not have been ascertained through reasonable diligence when the first petition was heard." Rule 32. 2(b), Ala. R. Crim. P. See also Whitt v. State, 827 So. 2d 369 (Ala. Crim. App. 2001).

III.

Finally, the appellant argues that his trial and appellate counsel rendered ineffective assistance. However, his claims consist of bare allegations that he

did not adequately support. Therefore, he has not
satisfied his burden of pleading as [sic] these claims.
See Rules 32.3 and 32.6(b), Ala. R. Crim. P. Also, these
claims are successive. See Rule 32.2(b), Ala. R. Crim.
P.

Because the appellant's claims were not sufficiently
pled and/or [are] precluded, the circuit court properly
summarily denied his petition. See Rule 32.7(d), Ala. R.
Crim. P. Accordingly, we affirm the circuit court's
judgment.

AFFIRMED.
McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.

Petitioner sought rehearing, which was denied. He then sought

*certiorari* in the Alabama Supreme Court, which was denied by order

dated June 13, 2003.

The petitioner filed the instant *pro se* petition for writ of

*habeas corpus* on July 30, 2001, raising the following issues: (1)

that he was denied effective assistance of trial counsel in that

(a) at his first trial his attorneys failed to offer "substantive

documentary or physical evidence to corroborate the accusatory

instrument which pulls together the commencement of the preliminary

proceedings in this felony case under authority;"[6] (b) his

conviction was obtained by the admission of evidence obtained

pursuant to an unconstitutional search and seizure; (c) his

---

[6] The petitioner fails to adequately explain Claim 1(a)
so that the court may decipher what "failure" is being
addressed; however, because the claim is specifically aimed
only at the performance of counsel at the first trial, the
claim clearly is MOOT.

conviction was obtained by the admission of evidence obtained pursuant to an unlawful arrest; (d) his conviction was obtained by the admission of evidence obtained in contravention of defendant's right against self-incrimination in that a conversation between the district attorney and the defendant was admitted into evidence; (e) counsel failed to object to the failure of the prosecution to produce a "green jumpsuit" seized from the vehicle in violation of Brady v. Maryland; (e) his conviction was obtained by a violation of defendant's protection against double jeopardy; (f) his conviction was obtained by use of testimony known to the prosecutor to be perjured and in violation of defendant's due process rights; (g) his attorneys failed to object to the lack of a proper initial appearance and arraignment and defendant's denial of his right to be present at every stage of the trial; (h) his conviction was the product of a fatally defective indictment; (i) his attorneys rendered ineffective assistance on appeal in that they failed to raise certain issues and to object to appellate court rulings; (2) the trial court was without jurisdiction to adjudicate petitioner guilty or to impose sentence where Barbara Street testified at trial and is named as a victim in the indictment; (3) the indictment used the language of a repealed statute; and (4) the names of the grand and petit jury members were drawn from pools of the county at large. Petitioner further asserts, in his initial petition and in an amended petition, that: (5) newly discovered

30

evidence demonstrates that the prosecution withheld material evidence favorable to the defendant in violation of <u>Brady v. Maryland</u>, including forensic hair and blood test results; and (6) the search warrant used to obtain evidence contained material false statements made intentionally and in disregard for the truth.

Pursuant to the court's order to show cause, the respondents filed an answer on October 4, 2001, supported by exhibits. On November 23, 2001, petitioner filed a brief, a motion to dismiss the respondents' answer, and a motion that the instant *habeas corpus* proceeding be held in abeyance while petitioner adjudicated a post-conviction proceeding in the trial court based on newly discovered evidence. The motion to dismiss was denied, and the motion to stay was granted by order dated January 23, 2002. By order of January 24, 2002, the parties were notified that the petition would be considered for summary disposition, and the petitioner was notified of the provisions and consequences of this procedure under Rule 8 of the <u>Rules Governing § 2254 Cases</u>. On February 12, 2002, and on August 9, 2002, petitioner filed additional briefs, supported by evidence. On July 3, 2003, petitioner sought leave to amend his *habeas* petition, which was granted. An amended petition was filed on August 13, 2003. On October 6, 2003, petitioner filed additional arguments and evidence in a document titled "Discovery and Production." On November 21, 2003, the respondents filed an answer to the amended petition. On

31

November 25, 2003, the court filed a second order regarding summary disposition.   The petitioner filed a response to the answer on November 26, 2003, and he filed a response to the order regarding summary disposition on December 8, 2003.

## PROCEDURAL DEFAULT

### 1.  Claims Not Exhausted Pursuant to Boerckel

The respondents assert that all of the petitioner's claims are due to be dismissed as procedurally defaulted.  Petitioner's claims of ineffective assistance of counsel (Claims 1(a)- (i)) all were raised in his first Rule 32 petition to the trial court. Petitioner raised the claims again on appeal from the trial court's denial, but after the denial was affirmed by the Alabama Court of Criminal Appeals, petitioner failed to include any ineffective-assistance claims in his petition for writ of *certiorari* to the Alabama Supreme Court.

The Supreme Court has determined that failure to seek such discretionary review precludes this court from examining the petitioner's claims on the merits.  O'Sullivan v. Boerckel, 119 S. Ct. 1728, 526 U.S. 838, 144 L. Ed. 2d 1 (1999).  It is well settled that before a federal court may grant *habeas* relief to a state prisoner, the prisoner must exhaust his remedies in state court. Exhaustion requires the state prisoner to give the state courts a full and fair opportunity to act on his claims before he presents

them to a federal court through a *habeas* petition. Boerckel, 119 S. Ct. at 1731; 28 U.S.C. § 2254(b)(1). The question of which state remedies must be invoked in order to satisfy the exhaustion requirement, which had been the subject of a conflict in the federal Courts of Appeals, was definitively settled by the Supreme Court in Boerckel.

In Boerckel the court examined the *habeas* petition of an Illinois state prisoner who had appealed his claims to the Appellate Court of Illinois, but had failed to seek *certiorari* to the Illinois Supreme Court. Id. The court examined the language of § 2254(c), which requires the prisoner to present his claims to any state court in which "he has the right under the law of the State to raise, by any available procedure, the question presented." Id. at 1732. Because Illinois had established a two-tiered appellate review system in which prisoners have the right to present their claims to the highest court, albeit through a discretionary review procedure, the court found that the prisoner could not assert that review in the Illinois Supreme Court is "unavailable" to him. Id. at 1732-33.

Similarly, Alabama offers a two-tiered system of appellate review. As in Illinois, access to the higher court of the state is available only at the court's discretion. However, just as in Boerckel, the petitioner in the instant case has offered no explanation as to why this review was "unavailable" to him.

33

Consequently, in keeping with the requirement made clear in Boerckel, a petitioner seeking *habeas* review in federal court must first file a petition for discretionary review with the Alabama Supreme Court. See *id*. at 1733.

Moreover, the Eleventh Circuit Court of Appeals has applied the Boerckel ruling and has explained its similarity to the case at bar. In Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), the appellate court noted:

> The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine. If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established. *Id*. at 848-49, 119 S. Ct. at 1734; *see also Coleman v. Thompson*, 501 U.S. 722, 750-51, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991). That is what happened to Boerckel. He actually did file a state discretionary review petition, but he left out of it three of the federal constitutional issues that he later included in his federal habeas petition. *Boerckel*, 526 U.S. at 840-42, 119 S. Ct. at 1730-31. By the time Boerckel got to federal habeas, it was too lat for him to go back and include those three issues in the long-since denied petition for discretionary review he had filed with the supreme court. What Boerckel's failure to take full advantage of his state discretionary review remedies meant, the Supreme Court held, is that he had failed to exhaust his state remedies as to those three federal constitutional issues, and his failure to exhaust had matured into a procedural default as soon as the once available remedy was closed. *Id*. at 848, 119 S. Ct. at 1734.

Smith, 256 F. 3d at 1138.

34

The petitioner at bar failed to file any petition for discretionary review with respect to his ineffective-assistance claims. The claims were not presented in his petition for writ of *certiorari* filed with the Alabama Supreme Court. There is no dispute that the opportunity to seek the discretionary review no longer is available to the petitioner. The time for filing such a petition has long passed. As a result, petitioner's failure to present any of the ineffective-assistance claims he now asserts in this court to the Alabama Supreme Court in a timely fashion resulted in a procedural default of those claims. See Boerckel, 119 S. Ct. at 1734. Accordingly, Claims 1(a)-(i) are due to be dismissed.

### 2. Claims Adjudicated on the Merits in State Court

Petitioner claims that the trial court was without jurisdiction to adjudicate petitioner's guilt or to impose sentence where Barbara Street testified at trial and was named as a victim in the indictment (Claim 2). He further alleges that the indictment used the language of a repealed statute (Claim 3). Both of these claims were raised in petitioner's first Rule 32 petition, were addressed by the Alabama Court of Criminal Appeals on appeal, and were then raised in a petition for writ of *certiorari* to the Alabama Supreme Court. Similarly, petitioner's claim that the jury pools were improperly selected (Claim 4) was raised in his direct

appeal, was adjudicated on the merits by the Alabama Court of Criminal Appeals, and was raised again in a petition for writ of *certiorari* to the Alabama Supreme Court.  The Alabama Court of Criminal Appeals resolved these issues, applying the proper standards set forth under state and federal law, and the appellate court's findings are due deference under 28 U.S.C. § 2254(d).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the petitioner can obtain relief on these claims only if he shows that the Alabama Court of Criminal Appeals' adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)and (2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2001). This standard of review is strict, and federal courts are required to give "greater deference to the determinations made by state courts than they were required to under the previous law." <u>Verser v. Nelson</u>, 980 F. Supp. 280, 284 (N.D. Ill. 1997)(quoting <u>Spreitzer v. Peters</u>, 114 F.3d 1435, 1441 (7th Cir. 1997)).

The state court determination of an issue will be sustained under § 2254(d)(1) unless it is "contrary" to clearly established,

controlling Supreme Court law or is an "unreasonable application" of that law.  These are two different inquiries, not to be confused.  The Supreme Court has explained:

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* ... clearly established Federal law, as determined by the Supreme Court of the United States." (Emphases added.)

Williams v. Taylor,  529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A state-court determination is "contrary" to clearly established law in either of two ways:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law.  Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.

Id. at 405.  Likewise, a state-court determination can be an "unreasonable application" of clearly established law in two ways:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a

37

> state-court decision also involves an unreasonable
> application of this Court's precedent if the state court
> either unreasonably extends a legal principle from our
> precedent to a new context where it should not apply or
> unreasonably refuses to extend that principle to a new
> context where it should apply.

Id. at 407; see Putman v. Head, 268 F.3d 1223 (11th Cir. 2001).

Whether the application is "reasonable" turns not on subjective

factors, but on whether it was "objectively unreasonable." The

question is not whether the state court "correctly" decided the

issue, but whether its determination was "reasonable," even if

incorrect.

In this case, the Alabama Court of Criminal Appeals decided

questions of state law by examining the merits of petitioner's

claims relating to the language of the indictment (Claims 2 and 3)

and questions of federal law relating to the jury pools (Claim 4).

The petitioner has failed to establish that the Alabama Court of

Criminal Appeals' adjudication of these claims resulted in a

decision that was contrary to, or involved an unreasonable

application of, any clearly established federal law, or that the

decision was based on an unreasonable determination of the facts in

light of the evidence presented in the state-court proceeding.

Petitioner has failed to show that the conclusion reached by the

Alabama state court was different from a factually similar Supreme

Court case.  Likewise, he has failed to show that the state court's

application of the legal standard was objectively unreasonable. Thus, petitioner's Claims 2, 3, and 4 are due to be denied.

### 3.  Claims Deemed Procedurally Barred by State Courts

Petitioner's remaining claims that newly discovered evidence demonstrates that the prosecution withheld material evidence favorable to the defendant in violation of Brady v. Maryland, including forensic hair and blood test results (Claim 5) and that the search warrant used to obtain evidence contained material false statements made intentionally and in disregard for the truth (Claim 6) also are procedurally defaulted because they were raised in the state court but were deemed to be procedurally barred by the last state court to address the issue.

Petitioner's Brady claim relating to the forensics reports (Claim 5) and his claim relating to false statements in the search warrant affidavit (Claim 6) were raised by petitioner in his second Rule 32 petition.  The trial court denied the petition on grounds that it was procedurally barred, and petitioner appealed.  The Alabama Court of Criminal Appeals affirmed, stating that the forensics report claim was barred by Alabama Rule of Criminal Procedure 32.1(e)(1) because he failed to satisfy his burden of demonstrating that the forensics reports constituted newly discovered evidence under Alabama law.  Similarly, the appellate court found that the claim relating to false statements in the

search warrant affidavit was barred by Rule 32.2(b) because the petitioner failed to raise the claim in his first Rule 32 petition and failed to demonstrate that he could not have raised it in the first petition.

The federal courts may not consider a claim set forth in a *habeas* petition when a petitioner has failed to follow the state's procedural rules for raising the claim in the state courts.   The Eleventh Circuit has stated:

> The federal courts' authority to review state court criminal convictions pursuant to writs of habeas corpus is severely restricted when a petitioner has failed to follow applicable state procedural rules in raising a claim, that is, where the claim is procedurally defaulted.   Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989), and that bar provides an adequate and independent state ground for denying relief. See id. at 262, 109 S. Ct. at 1042-43; Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed. 2d 575 (1988).   The doctrine serves to ensure petitioners will first seek relief in accordance with state procedures, see Presnell v. Kemp, 835 F.2d 1567, 1578-79 (11th Cir. 1988), cert. denied, 488 U.S. 1050, 109 S. Ct. 882, 102 L. Ed. 2d 1004 (1989), and to "lessen the injury to a State that results through reexamination of a state conviction on a ground that a State did not have the opportunity to address at a prior, appropriate time." McCleskey v. Zant, ___ U.S. ___, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991).

Johnson v. Singletary, 938 F.2d 1166, 1173 (11th Cir. 1991).   Thus, if a claim previously has been presented to a state court in some

form, a federal *habeas* court may refuse to hear that claim only if the last state court rendering the judgment "'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308, 317 (1989).

In this case, the Alabama Court of Criminal Appeals clearly and expressly noted that the petitioner procedurally defaulted his claims by failing to demonstrate that they could not have been raised in his first Rule 32 petition. Accordingly, it is clear from the record that the last state court to review the claims set forth herein "clearly and expressly" stated that its judgments rested on a procedural bar, which was independent and adequate under state law. See Whiddon v. Dugger, 894 F.2d 1266 (11th Cir. 1990).

### 4. 'Cause and Prejudice'

If a petitioner has procedurally defaulted on a constitutional claim, he is barred from litigating it in a federal *habeas corpus* proceeding unless he can show adequate "cause" for and "actual prejudice" from the default. Wilson v. Jones, 902 F.2d 923, 925 (11th Cir. 1990); Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); Wainwright v. Sykes, 433 U.S. 71, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). The "cause and prejudice" test of Engle v. Isaac and Wainwright v. Sykes is in the conjunctive;

41

therefore, petitioner must prove both cause and prejudice.   The

United States Supreme Court summarized the "cause" standard in

following manner:

> In Wainwright v. Sykes, 433 U.S. 72 (1977), this Court
> adopted the "cause and prejudice" requirement of Francis
> v. Henderson, supra, for all petitioners seeking federal
> habeas relief on constitutional claims defaulted in state
> court.   The Sykes Court did not elaborate upon this
> requirement, but rather left open "for resolution in
> future decisions the precise definition of the `cause-and
> -prejudice' standard." 433 U.S. at 87.   Although more
> recent decisions likewise have not attempted to establish
> conclusively the contours of the standard, they offer
> some helpful guidance on the question of cause.   In Reed
> v. Ross, 468 U.S. 1 (1984), the Court explained that
> although a "tactical" or "intentional" decision to forgo
> a procedural opportunity normally cannot constitute
> cause, id. at 13-14, "the failure of counsel to raise a
> constitutional issue reasonably unknown to him is one
> situation in which the [cause] requirement is met." Id.
> at 14.   The Court later elaborated upon Ross and stated
> that "the existence of cause for a procedural default
> must ordinarily turn on whether the prisoner can show
> that some objective factor external to the defense
> impeded counsel's efforts to comply with the State's
> procedural rule." Murray v. Carrier, 477 U.S. 478, 488
> (1986). We explained that "a showing that the factual or
> legal basis for a claim was not reasonably available to
> counsel, ... would constitute cause under this standard."
> Ibid.   (Citations omitted.)

Amadeo v. Zant, 486 U.S. 214, 221-22, 108 S. Ct. 1771, 100 L. Ed.

2d 249 (1988).

The petitioner must also demonstrate that he was prejudiced;

he must show "not merely that the errors ... created a possibility

of prejudice, but that they worked to his actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)(emphasis in original). A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (quoting, respectively, Engle, 456 U.S. at 135, and Murray, 477 U.S. at 496).

The petitioner has not shown "cause and prejudice" for excusing the procedural default nor has he made a showing of factual innocence so that the claims can be considered under the "fundamental miscarriage of justice" exception to procedural default. Petitioner does argue that he did not have the forensic reports at issue until April of 2003, and he argues that he is actually innocent, but neither of these claims is based in fact. Petitioner concedes that he knew forensic reports existed as early as the first trial. Furthermore, he concedes that portions of the records were filed with the court on the last day of his first trial in 1991, six years before the trial he now challenges. Accordingly, petitioner knew as early as 1991 that the prosecution did not produce the reports in discovery and that his attorneys

43

failed to properly pursue that issue.[7] Petitioner has not asserted that he made any attempt to acquire the reports in a timely fashion.  Moreover, petitioner has offered no explanation for his failure to present his ineffective-assistance claims to the Alabama Supreme Court for discretionary review.  Finally, petitioner has failed to make any showing of actual innocence[8] that could warrant consideration of the claims despite his procedural default of them. Thus, all of petitioner's claims are due to be denied as procedurally defaulted.

### 5.  The Merits of Petitioner's Brady Claim

The court has determined that the petitioner's claim relating to the production of the forensics report (Claim 5) is due to be denied because it was procedurally defaulted.  The court notes, however, that even if the claim had not been defaulted it still would fail upon an examination of its merits.  Petitioner has provided the court with a copy of the forensics reports at issue. Petitioner argues that the reports could have been used to "impeach

---

[7] Petitioner repeatedly argues that he is entitled to relief for any alleged Brady violation that occurred at the first trial, but the court reiterates that, even if such a violation occurred, it did not prejudice the petitioner, whose first conviction was reversed and who had a second opportunity to prepare a defense and to conduct discovery.

[8] Petitioner's discussions of his "actual innocence" are discussed more fully *infra* in relation to the merits of his Brady claim.

and effectively cross-examine" state's witnesses Warren Stewart, Phyllis Rollan, and Steven Drexler.  Warren Stewart did not testify in petitioner's second trial, and therefore any impediments to efforts to impeach or cross-examine him are entirely irrelevant to the instant petition.  Accordingly, the court considers the testimony of  Rollan and Drexler, and any impact the forensics reports may have had on the defendant's ability to impeach or cross-examine them.

Phyllis Rollan testified at petitioner's second trial about blood testing.  In sum, she testified that she visited the crime scene and collected what appeared to be blood stains.  She also collected samples from a Dodge Aspen vehicle and a yellow car.  She received blood samples from the two victims, Street and Brown, and from the petitioner.  Rollan tested the blood samples from Street, Brown, and petitioner and determined that each of them had type O blood.  She tested stains taken from the Aspen's driver's side armrest, driver's side door latch, driver's window, and driver's side carpet, and determined that the stains were human blood.  A test of the steering wheel of the Aspen was negative for blood.

Rollan testified that she examined the petitioner's arms, hands, and face for the presence of blood.  She and another analyst collected swabs from petitioner's thigh, arm, palm, nose, and face. Tests of those swabs showed the presence of human blood.

on either of the items.  She also stated that stains from
petitioner's left palm, a pair of gray pants, a shirt, and a
floormat from the car all were tested and that she was unable to
determine whether the stains were human blood.  She again stated
that the towel that was located in a garage along with the overalls
and coveralls had failed to show the presence of blood.
(Transcript, pp. 912-924).

The second expert forensics witness to testify at petitioner's
second trial was Steven Drexler.  He testified as to trace evidence
in the case, including hair comparisons, as follows.  He received
sample hairs from the petitioner, Wayne Brown, and Barbara Street,
as well as hairs recovered from a door facing at the crime scene,
from the top of the stairs at the crime scene, from the bedroom
floor of the crime scene, from the arms of victim Brown, and from
the right hand of victim Brown.  Drexler testified that the hair on
the door facing was inconsistent with the two victims, but
consistent with petitioner's.  Drexler testified that the hair from
the top of the stairs was consistent with Brown's.  He found that
the hairs on the bedroom floor were consistent with having been
forcibly removed from the scalp and were consistent with the
petitioner.  The jacket also contained two types of hair.  Thirteen
of the hairs were consistent with Brown's, had been torn or ripped
from the scalp, and had some singed ends, which also was consistent
with the Brown sample.  The other 10 hairs were consistent with

those of petitioner, and three of the 10 had been forcibly removed. Drexel examined the overalls, coveralls, and towel together, and found 17 hairs. Fourteen were consistent with petitioner's hair. Drexler also tested all of the hairs taken from victim Brown's arms and hand, and found that they all were consistent with petitioner's hair sample. The hairs were consistent with having been pulled or broken off of the scalp. (Transcript, pp. 927-60).

On cross-examination, Drexler explained that hair identification is less certain than fingerprint identification and only indicates whether hair "could have" come from a known source, not whether the hair actually identifies a source. He further stated that on the clothing he tested he found three long, artificially-treated Caucasian hairs that were not consistent with petitioner, Brown, or Street. The crime scene also contained a total of seven hairs that were inconsistent with any of the three known sources, and an inconsistent hair was found on Brown's foot. No hair or fiber was found in the fingernail scrapings taken from the petitioner. (Transcript, pp. 965-80).

Petitioner argues that because one swab taken from petitioner's arm was "inconclusive" for the presence of blood, the jury would not have believed that there was any blood on petitioner's left forearm. Petitioner further asserts that evidence of a few "inconclusive" results somehow would persuade the jury to ignore all of the results that did show the presence of

48

blood on petitioner's body.   Petitioner makes further arguments that question the chain of custody, such as whether the jacket was delivered to Drexler on December 13, 1990, or a day later. Petitioner argues that, had his attorneys had the forensics report at trial, they could have: (1) moved to exclude the state's evidence on the basis that the affidavit contained a false statement that the officer observed dried blood on petitioner's hands, and (2) used the report to impeach the forensic witnesses.

It is well established pursuant to Brady v. Maryland, 373 U.S. 83, 83 S Ct. 1194, 10 L. Ed. 2d 215 (1963), that the state has an obligation to disclose to the defense evidence favorable to the defense.   The Supreme Court has determined that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.   In United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), the Supreme Court further held that regardless of whether the defense made a request for favorable evidence, the evidence is "material," and the government commits constitutional error in suppressing such evidence, where "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." Bagley, 473 U.S. at 682. Accordingly, to prevail on a Brady claim, the defendant need not

demonstrate that the disclosure would have resulted in an acquittal, but must show that a different result was "reasonably probable." Id.

On the other hand, not every instance of non-disclosure constitutes a due process violation. The question the court must ask is whether the defendant would "more likely than not have received a different verdict" if he had been given access to the information," and whether the suppression of evidence is such that it "undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678. Finally, the question of suppression of evidence must be evaluated in terms of the collective effect of the suppression of the evidence, and not by examining the suppressed evidence one item at a time. Kyles v. Whitley, 514 U.S. 419, 436, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

In this case, the prosecutor's apparent failure to disclose the written reports on the forensic tests rises to the level of a Brady or Giglio[9] violation only if they contain material exculpatory or impeachment evidence that, viewed collectively, make it reasonably probable that the verdict would have been an acquittal, and undermine the confidence in the outcome of the

---

[9] Although petitioner does not specifically argue the application of Giglio v. United Sates, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972), he does argue that the reports were necessary for effective impeachment of the forensics experts. Accordingly, the court views his claim as one based on both Brady and Giglio.

trial.  Petitioner's arguments are unpersuasive.  Petitioner has failed to point to any evidence contained within the forensics report that is exculpatory.[10]  The mere fact that some tests were inconclusive, or that a hair found on the overalls was not identified, does not point to any other suspect and is not probative of the guilt or innocence of petitioner.  Likewise, the reports do not contain any evidence that contradicts any material statement made by the two forensics experts.  Accordingly, they do not contain impeachment testimony as would bring the reports into the ambit of Giglio.[11]  The prosecution's expert witnesses testified in court that some tests were inconclusive, and that several strands of unidentified hair were found on the clothing.  It is clear that the defense had the crucial information at or before trial, and petitioner has not demonstrated that the reports would satisfy the requirements that create a violation of either Brady or Giglio.  Finally, the court notes that petitioner's assertions that

---

[10] Evidence of the long hair that was inconsistent with the victims or the petitioner was introduced at trial, as was evidence that some of the tests for the presence of blood were inconclusive, and the testimony that tests of the towel did not show the presence of the blood.  In other words, the evidence that might be viewed as exculpatory was disclosed. The defense attorneys knew of the substance of the report even if they did not receive a copy of the report itself, and they used this favorable evidence at trial.

[11] Although petitioner makes several arguments that the chain of custody evidence may have been flawed or incomplete, the petitioner does not even allege, much less make any showing, that the evidence was not what is was purported to be.

the forensics experts failed to provide DNA tests is without any basis in fact. The trial transcript clearly shows that the prosecution had DNA evidence that could have inculpated - not exculpated - the petitioner, and that petitioner's attorneys were successful in preventing the DNA evidence from being admitted into evidence. Petitioner has failed to show that, if defense counsel had obtained the reports before or during trial, the cross-examination of the expert witnesses would have been any more favorable to the defendant. The attorneys pointed out the "holes" in the report, the commonality of the type O blood, and the absence of a finding of blood on the towel. Disclosure of the reports cannot be said to have made it "reasonably probable" that the outcome of the trial would have been different. Nor does the nondisclosure in any way undermine confidence in the fairness of petitioner's trial. Accordingly, the court determines that, even if the petitioner's claim relating to the forensic reports were due to be examined on the merits, it would be due to be dismissed as lacking in merit.

## RECOMMENDATION

Accordingly, for the reasons stated above, the magistrate judge hereby RECCMMENDS that the petition for writ of *habeas corpus* under 28 U.S.C. § 2254 be DISMISSED WITH PREJUDICE.

Any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk.   Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal.

The Clerk is DIRECTED to serve a copy of this Report and Recommendation upon the petitioner and upon counsel for the respondents.

DATED this ___5th___ day of ___March___, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

53